Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) NO. CR09-116JCC |
| Plaintiff, | ) |
|  | ) GOVERNMENT'S SENTENCING |
| v. | ) MEMORANDUM |
|  | ) |
| ALVIN HENRY WHITESIDE, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## I. INTRODUCTION

On April 27, 2009, the defendant, Alvin Henry Whiteside, entered a plea to one count of *felon in possession of a firearm*, in violation of Title 18, United States Code, Section 922(g)(1), as charged in the Information. Whiteside is scheduled to be sentenced on Thursday, August 20, 2009, at 9:00 a.m., at which time the United States will recommend a sentence of 120 months, followed by 3 years of supervised release.

## II. FACTUAL SUMMARY

In July of 2008 a confidential informant (CI) provided information about a number of Blood gang members in South King County and North Pierce County. The CI was able to provide specific information about these individuals which included their legal names, home addresses, vehicle license plate numbers, and cellular telephone numbers. The CI had observed members of this group sell narcotics and was present when large quantities were transported across state lines and over great distances within Western

GOVERNMENT'S SENTENCING MEMORANDUM - 1
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Washington. For example, the CI explained that members of this group would travel down to California to purchase phencyclidine (PCP) and, when there was shortage of cocaine locally, they would also purchase cocaine. According to the CI, cocaine was typically purchased in kilogram and half-kilogram quantities and the minimum amount of PCP typically purchased was nine ounces. Oftentimes, members of this group would make special trips to Bellingham where they would sell cocaine base (crack cocaine they had cooked from the powder cocaine they had purchased), PCP and marijuana. The CI accompanied the group on a few of these trips.

The CI identified Whiteside, as a member of this group. The CI explained that Whiteside was originally from California but now lived at 3252 South 376th Place, Auburn, Washington, with a female roommate (later identified as Ernestine Mae Greene). According to the CI, Darryl Deloach, another member of the group, had recently moved into Whiteside's home, after being kicked out of his residence by his wife.

The CI explained that he/she had witnessed Whiteside deliver drugs on a number of different occasions. The CI also explained that he/she had worked as a "middleman" for Whiteside, delivering crack cocaine and marijuana to his customers. The deliveries involved up to three ounces of crack cocaine and up to a quarter-pound of marijuana. The CI also accompanied Whiteside on a trip to California. The purpose of the trip was to buy a kilogram of cocaine because there was a shortage of cocaine locally at the time. The CI was present when Whiteside purchased a kilogram of powder cocaine and explained that Whiteside later returned it to the seller due to the poor quality of the cocaine. Finally, the CI also informed officers that he/she had observed Whiteside in possession of a firearm on several different occasions.

Based on the information provided by the CI, a search warrant was obtained for Whiteside's residence. On August 25, 2008, the warrant was served. Whiteside, Ernestine Greene and Greene's five-year-old child were inside the home when the police entered. Both Whiteside and Greene were advised of their Miranda rights, which they waived, and agreed to speak with the police. Both explained that they have lived in the

GOVERNMENT'S SENTENCING MEMORANDUM - 2
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

home for the past three years. Greene also explained that they pay rent in the amount of $1,495 per month and stated that Whiteside helps pay the rent, despite having been unemployed for quite some time. Whiteside admitted selling small quantities of marijuana on a daily basis, but would not admit to selling cocaine or PCP. Whiteside also admitted that he had a 9mm pistol in the top drawer of the night stand next to his bed, telling the police that he had purchased the firearm "off the streets" some time ago. Whiteside explained that he kept the firearm, despite the fact that he knew as a convicted felon it was illegal for him to possess it, because he has enemies.[1] Despite the gang photos displayed in the dining room, Whiteside denied being actively involved in a street gang, admitting only that he had been a member of the Elm Street Pirus (Bloods) when he lived in Compton, California.

During the search of the house the police located the following items in the locations listed below:

**Master Bedroom**

- numerous bags containing approximately 25.6 grams of marijuana (on the night stand next to the bed)

- a Smith and Wesson, model 915, 9mm semi-automatic pistol bearing serial number VCJ3599, which was loaded with 14 rounds in the magazine and one round in the chamber (in the

---

[1] Whiteside was prohibited from possessing a firearm due to the following five felony convictions, all of which were for crimes punishable by imprisonment for a term exceeding one year:

(1) *Possession with Intent to Deliver Cocaine while Armed with a Deadly Weapon (Firearm),* under cause number 93-1-07836-2, in King County Superior Court, Washington, on October 14, 1994;

(2) *Delivery of Cocaine*, under cause number 94-1-00295-8, in Lewis County Superior Court, Washington, on February 10, 1995;

(3) *Unlawful Possession of a Firearm in the Second Degree*, under cause number 00-1-03953-7, in King County Superior Court, Washington, on July 7, 2000;

(4) *Possession of Cocaine*, under cause number 01-1-00505-3, in King County Superior Court, Washington, on June 11, 2001; and

(5) *Possession of Cocaine,* under cause number 02-1-02938-4, in King County Superior Court, Washington, on May 2, 2003.

GOVERNMENT'S SENTENCING MEMORANDUM - 3
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

- night stand next to the bed)

- a wallet with documents in Whiteside's name (in the night stand next to the firearm described above)

- a large pair of men's pants which contained Whiteside's identification, $97 in United States currency, and approximately 3 grams of marijuana (on the same side of bed as the night stand with the firearm)

- a red bandana (in the dresser)

- a box containing trace amounts of marijuana, many small plastic bags, a spoon, and a knife (under the bed)

- $2,900 in United States currency (inside the pocket of a female jacket hanging in the closet)

- two cell phones

**Kitchen**

- a box containing a scale with marijuana and cocaine residue, some utensils and numerous bags containing approximately 18 grams of marijuana (on the kitchen counter)

- a box of baking soda and two boxes of plastic sandwich bags

- miscellaneous documents, including bills and a rental agreement for the home in Whiteside's name

- gang photographs (hanging on the refrigerator)

**Dining Room**

- gang photographs (hanging on the wall)

**Laundry Room**

- a stolen Springfield Arms, model Champion, .45 caliber semi-automatic pistol bearing serial number WW96548, which was loaded with seven rounds in the magazine (inside a green gun case located in the closet)

- a box of 9mm ammunition (inside the green gun case in the closet)

- Smith and Wesson, model 66, .357 revolver bearing serial number 4K10878 (inside a black gym bag in the closet)

- two speed loaders, each containing six rounds of .357 caliber ammunition (inside the black gym bag in the closet)

- 100 rounds of .357 caliber ammunition (in the black gym bag in the closet)

GOVERNMENT'S SENTENCING MEMORANDUM - 4
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

- a 16 ounce Snapple bottle containing 38.8 grams of pure PCP

**Garage**

- a Glock, model 17, 9mm semi-automatic pistol bearing serial number MV732US, with an extended high-capacity magazine loaded with 17 round of ammunition (inside a television box)
- handwritten and typed lyrics to songs produced by "Junkman"(according to the CI Deloach's street name is "Junk") (inside the television box)
- roster of deceased Elm Street Piru gang members (inside the television box)
- documents in Deloach's name (inside a clothes hamper)
- a "Calgon" tin containing a bag with approximately 3 grams of marijuana, a glass pipe, rolling papers, a razor blade, other drug paraphernalia and a business card for "Junkhouse Productions" in Deloach's name
- approximately 50 small glass vials, a measuring cup, and razor blade, in a garbage bag with music CDs and miscellaneous electronics equipment
- a pyrex measuring cup
- 10 two-ounce, 1 two-ounce and 1 one-ounce vanilla extract bottles, along with approximately 40 small glass vials (clear and blue in color) and a syringe bulb
- five food coloring boxes
- 8 separate one-ounce food coloring bottles filled with 21.8 grams of pure PCP
- an eight-ounce plastic measuring bottle that smelled of PCP

Whiteside and Greene denied knowing anything about the PCP found in the laundry room and the garage. When asked how it made it into the house, Whiteside explained that a friend, Darryl Deloach, has been living in the house the past two months and that it must belong to him. Whiteside and Greene also denied knowing anything about the second and third firearms found in the laundry room and the fourth firearm located in the garage. Whiteside offered that they must belong to Deloach, telling the police that Deloach kept a number of items in the garage, including two baskets of clothing. When asked if Deloach would take credit for the PCP, Whiteside said that he

GOVERNMENT'S SENTENCING MEMORANDUM - 5
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  might. Whiteside then called Deloach in an effort to get him to return to the house.

2  Shortly thereafter Deloach arrived at the house driving a GMC Suburban and was
3  placed into custody. His Suburban was searched incident to arrest and the police located
4  14 small glass vials hidden in the center console which contained 1.2 grams of pure PCP
5  and 8 small vials that were empty. These vials were either clear or blue in color and were
6  similar to some of the vials found in the garage.

### III. STATUTORY PENALTIES

*Felon in possession of a firearm*, is a class C felony punishable by a term of imprisonment up to ten years, a fine up to two-hundred-fifty-thousand dollars ($250,000), and up to three years of supervised release.

### IV. THE SENTENCING GUIDELINES CALCULATION

As provided in the Plea Agreement and explained in the PSR, the United States and the defense agreed upon a total offense level of 25 for purposes of sentencing. Plea Agreement ¶ 7; PSR ¶ 3. Due to the fact that Whiteside's prior convictions place him in to criminal history category VI, the resulting guideline range is 110 to 137 months. However, because the statutory maximum is 120 months, the guideline range is effectively 110 to 120 months.

The parties' calculation of the offense level differs slightly from United States Probation Officer (USPO) Brieanne Olsen's calculation. USPO Olsen believed that the appropriate offense level was 30. PSR ¶¶ 19-32. The difference is due to the fact that she held Whiteside accountable for all four firearms found inside the residence, one of which was stolen and another of which had a large capacity magazine.[2]

---

[2] The inclusion of the firearm with a large capacity magazine increased the base offense level from 24, as calculated by the parties, to 26. Plea Agreement ¶ 7a; PSR ¶ 20; USSG § 2K2.1(a)(1). In addition, the inclusion of all four firearms led to two separate two-level increases because (1) the offense involved four firearms and (2) one of the firearms was stolen. PSR ¶¶ 21-22; USSG §§ 2K2.1(b)(1)(A) and (4)(A). These adjustment raised the offense level to 30, however, since the adjustments under sections (b)(1) through (b)(4) cannot exceed 29, the offense level was capped at 29. PSR ¶ 23. At this

GOVERNMENT'S SENTENCING MEMORANDUM - 6
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970


## V. SENTENCE RECOMMENDATION

The United States respectfully requests this Court to sentence Whiteside to 120 months of imprisonment. The United States also respectfully requests this Court to order three years of supervised release and impose the proposed conditions set forth in the Presentence Report. The United States firmly believes that a 120-month sentence is appropriate after considering the advisory guideline range calculated above, in conjunction with the factors set forth in Title 18, United States Code, Section 3553(a), which are discussed below.

### A. Nature and Circumstances of the Offense

Whiteside, a five-time convicted felon, admitted to possessing one firearm and acknowledged that there were three other firearms in his residence, one of which had been stolen and another which contained a high capacity magazine. Plea Agreement ¶ 10. Whiteside knew he could not legally possess a firearm as both the courts and his previous probation officers had repeatedly told him that he was prohibited from doing so. He, however, ignored the law in order to protect himself, his drugs and the money he earned by selling them.

Not surprisingly, Whiteside's poor decision to sell drugs led to another when he decided to possess a firearm to protect himself from the dangers of drug dealing. That decision not only endangered himself, but also the others inside his home, including his five-year-old stepdaughter. These were decisions that could have resulted in a fifteen-year mandatory minimum term of imprisonment had the United States sought to charge him with a drug distribution offense and a 924(c) violation. *See* 18 U.S.C. § 924(c); Plea Agreement ¶¶ 9, 11. While the United States chose not to seek these mandatory penalties,

---

point the parties and USPO Olsen both added a four-level enhancement for possessing the firearm(s) in connection with the felony offense of *possession of marijuana with the intent to distribute*, which raised the parties' offense level to 28 and USPO Olsen's to 33. Plea Agreement ¶ 7b; PSR ¶ 24; USSG § 2K2.1(b)(6). Then, finally, both the parties and USPO Olsen reduced the offense level by three levels for acceptance of responsibility, resulting in the parties' agreed offense level of 25 and USPO Olsen's offense level of 30. Plea Agreement ¶ 7c; PSR ¶ 29; USSG §§ 3E1.1(a) and (b).

GOVERNMENT'S SENTENCING MEMORANDUM - 7
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

their very existence illustrates just how serious these offenses were.

This will now be Whiteside's second conviction for unlawfully possessing a firearm, having been convicted of a similar crime in 2000. PSR ¶ 62. Moreover, as will be discussed in more detail below, this incident represents the fifth time he has either been convicted of, or arrested for, an offense involving a firearm. PSR ¶¶ 33, 48, 62, 76.

Clearly, this was a serious offense, especially in light of Whiteside's history with firearms and his use/distribution of drugs.

B.  **History and Characteristics of the Defendant**

Whiteside's criminal history is filled with firearms, drugs and violence. As stated above, this is Whiteside's fifth documented incident involving a firearm. His first incident involving a firearm occurred in 1986 when he was arrested and charged with *robbery* and *assault with a firearm with infliction of great bodily injury* as a 13-year-old. PSR ¶ 34. The second incident occurred less than a year later when he was arrested for *assault* and *possession of a firearm*. PSR ¶ 76. The third incident occurred in 1993 and he was ultimately convicted of *possessing cocaine with the intent to deliver while armed with a firearm*. PSR ¶¶ 48-49. His fourth documented incident occurred in 2000 and resulted in a conviction for the crime of *unlawful possession of a firearm in the second degree*. PSR ¶¶ 62-63. The present case now represents the fifth, and hopefully the last, firearm-related incident.

Equally concerning is Whiteside's history with drugs which, like his connection with firearms, also dates back to when he was just 13 years old. PSR ¶¶ 37-38 (Whiteside was arrested, charged and convicted of *possessing crack cocaine with the intent to distribute* in 1988). Since that time he has used and/or distributed drugs such as cocaine, marijuana and PCP on a regular basis. For example, he was convicted of three additional drug distribution offenses (in 1990, 1993, and 1994) and six additional drug possession offenses (in 1994, 2000, 2002, and 2005). PSR ¶¶ 39, 41-42, 48-50, 55-58, 65-70. In addition, he has also been arrested on three separate occasions for drug-related violations which were later dismissed. PSR ¶¶ 74, 77-78. Based on the facts in this case, nothing

GOVERNMENT'S SENTENCING MEMORANDUM - 8
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

has changed as he has clearly continued to abuse drugs and sell them to support himself.

Finally, there is thread of violence which runs through his criminal history as well. He has been convicted of crimes such as *assault* and *battery*.  PSR ¶¶ 39, 44, 59-61. Moreover, he has also been arrested and/or charged with crimes like *robbery*, *assault with a firearm*, *menacing* and *telephone harassment*.  PSR ¶¶ 34, 36, 40, 76, 92, 94.

**C.     Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The crime of *felon in possession of a firearm*, in and of itself, is a very serious offense.  When you add to the mix the use and distribution of drugs, the dangers are multiplied and oftentimes fatal.  A sentence of 120 months will reflect the true seriousness of the crime and will constitute just punishment for the offense.  Moreover, as will be argued below, Whiteside has quickly re-offended after receiving shorter, yet substantial sentences in the past.  Hopefully a 120-month sentence will promote respect for the law, something his previous sentences have yet to accomplish.

**D.     Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct**

What is clear from looking at Whiteside's criminal history is the fact that despite being told time and time again that he cannot possess a firearm and deal drugs, he has continued to do so.  Equally as alarming has been how quickly he has re-offended once he is released.  For example, less than five months after serving a 90-month sentence for delivery of cocaine, Whiteside was arrested for unlawful possession of a firearm.  PSR ¶¶ 55, 62-64.  Then, just a little over six months later, he was arrested for possessing cocaine and marijuana.  PSR ¶¶ 65-67.  Unfortunately, each time upon being released he has continued to make the same poor decisions.  Obviously, his prior sentences have not had the desired affect on him and his behavior.  A sentence of 120 months hopefully will.

**E.     Need to Protect Public from Future Crimes of the Defendant**

Whiteside's prior arrests and convictions, combined with his actions in this case, lead to but one conclusion: Whiteside will again arm himself with a firearm and deal drugs when he is released.  Whiteside has consistently and repeatedly disobeyed orders of

GOVERNMENT'S SENTENCING MEMORANDUM - 9
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  the Court, and disregarded the law, by continuing to possess firearms and deal drugs.  As
2  long as he continues to do so, he will be a threat to this community.
3       His actions in this case, taken in conjunction with the actions underlying his
4  previous arrests and convictions, illustrate that he presents a serious danger to the
5  community and is either unwilling or incapable of changing his ways.  The public must be
6  protected from him.

**F.    Need to Provide the Defendant with Educational and Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

9       Like many defendants, Whiteside has experimented with different drugs including
10 PCP, however, marijuana and alcohol have been the only substances he has consistently
11 used/abused.  PSR ¶¶ 109-111, 114.  While Whiteside has shown the ability to abstain
12 from both alcohol and marijuana while he is incarcerated and, more importantly, while on
13 probation, he apparently lacks the desire to remain drug free as he quickly returns to using
14 both substances once he is released from jail and/or supervision.  PSR ¶¶ 109-110.
15 Whiteside believes he is addicted to both substances and would like to receive treatment
16 while he is incarcerated.  PSR ¶¶ 109-110, 112.  It should be noted that Whiteside
17 previously completed a treatment program while imprisoned in 1999.  PSR ¶ 112.
18      Whiteside attended high school through the eleventh grade and obtained his GED
19 while imprisoned in 1995.  PSR ¶¶ 116, 118.  His employment history is limited and he
20 has supported himself primarily by selling drugs.  PSR ¶¶ 119-121.
21      There is no evidence to suggest that Whiteside has suffered, or is currently
22 suffering, from any mental or emotional problems.  PSR ¶¶ 106-108.
23      In short, Whiteside does not appear to have any unique issues or concerns that
24 would require special attention or treatment.

**G.    Kinds of Sentences Available**

26      Because the guideline range falls within Zone D of the Sentencing Table, the
27 minimum term must be satisfied by a term of imprisonment, pursuant to USSG
28 § 5C1.1(f).  PSR ¶ 126.  For the reasons argued above and below, the United States

GOVERNMENT'S SENTENCING MEMORANDUM - 10
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

believes that a sentence of 120 months is appropriate.

**H.      Need to Provide Restitution to the Victims**

This factor does not apply in this case.

**I.       Need to Avoid Unwarranted Sentence Disparity Among Defendants Involved in Similar Conduct Who Have Similar Records**

There is simply no compelling reason to depart from the advisory guideline range in this case. Based upon his uninterrupted criminal activity for the last 23 years, which has included the repeated possession of firearms and distribution of drugs, a sentence at the top of the range is appropriate. Moreover, it should also not go unnoticed that 13 of his 23 prior criminal convictions, as well as his 22 other arrests, were not used in the calculation of his criminal history category. Finally, considering the fact that he could have faced a mandatory minimum sentence of 180 months and a guideline range sentence of 188 to 235 months (or 262 to 327 months without acceptance of responsibility) had the United States chosen to charge him with *possession of PCP with the intent to distribute* and *possessing a firearm in furtherance of a drug trafficking crime*, a sentence of 120 months is incredibly reasonable and, honestly, quite generous. *See* Plea Agreement ¶¶ 9, 11; PSR ¶ 2.

//
//
//
//
//

GOVERNMENT'S SENTENCING MEMORANDUM - 11
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

|    |    |
|---|---|
| 1 | **VI. <u>CONCLUSION</u>** |
| 2 | For the foregoing reasons, the United States respectfully requests the Court to |
| 3 | sentence Whiteside to 120 months of imprisonment, followed by 3 years of supervised |
| 4 | release.  The United States also asks the Court to impose the conditions set forth in the |
| 5 | Presentence Report submitted by Brieanne Olsen on behalf of United States Probation. |
| 6 | DATED this 14th day of August, 2009. |

Respectfully submitted,

JEFFREY C. SULLIVAN
United States Attorney

 s/ C. Andrew Colasurdo
C. ANDREW COLASURDO
Special Assistant United States Attorney
WSBA #27449
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, WA 98101-3903
Telephone:    206-553-7970
Fax:              206-553-4986
E-mail:    Andy.Colasurdo@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM - 12
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of record for the defendant(s).

s/FAY FRENCH
Fay French
Program Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-2270
FAX:   (206) 553-0755
E-mail:  Fay.French@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM - 13
United States v. Alvin Henry Whiteside, CR09-116JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970